DECISION AND JUDGMENT ENTRY
This is a consolidated appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, in which appellant was found guilty of two counts of impersonating a peace officer, one count of attempted grand theft, one count of theft, and one count of burglary.
On appeal appellant, Sterling Cromer, sets forth the following two assignments of error:
 "I. DEFENDANT'S CONVICTION FOR BOTH THEFT AND BURGLARY WAS ERROR AS THESE ARE `ALLIED OFFENSES OF SIMILAR IMPORT' FOR WHICH ONLY [SIC] CONVICTION SHOULD RESULT.
 "II. DEFENDANT'S CONVICTION ON TWO COUNTS OF IMPERSONATING A PEACE OFFICER WERE IN ERROR AS THESE SHOULD HAVE BEEN MERGED."
The facts that are relevant to the issues raised on appeal are as follows. On September 24, 1997, Richard Booker and his wife, Louise, received a telephone call from appellant, Sterling Cromer, who stated that he had found Mr. Booker's wallet and wanted to return it. Shortly thereafter, appellant and an accomplice, Fred Polk, arrived at the Bookers' residence at 2015 Sandringham in Toledo, Ohio. Appellant and Polk showed Mr. Booker badges, stated that they were investigating a bank crime, and asked him for some cash to aid them in their investigation. In response, Mr. Booker produced approximately $1,800 in cash, mostly in $100 bills, which he gave to appellant. Thereafter, appellant and Polk accompanied the Bookers to National City Bank, where Mr. Booker attempted to withdraw $10,000 in cash, while appellant and Polk waited outside in the Bookers' automobile.
When Mr. Booker attempted to withdraw the $10,000 from his account, a bank employee became suspicious and notified the Toledo Police. When the police arrived at the bank, they noticed appellant and Polk in the parking lot. Upon being approached by two officers appellant, who was carrying a badge and handcuffs, told the officers that Polk and he were Detroit policeman. When appellant and Polk failed to produce further identification to verify that they were police officers, they were arrested.
On October 3, 1997, the Lucas County Grand Jury indicted appellant on one count of burglary, in violation of R.C.2911.12(A)(1), one count of theft, in violation of R.C.2913.02(A)(3), and one count of attempted grand theft, in violation of R.C. 2913.02(A)(3) and R.C. 2923.02 ("Case No. 98-1377"). On November 7, 1997, the Grand Jury indicted appellant on two counts of impersonating a peace officer, in violation of R.C. 2921.51(E) and (G) ("Case No. 98-1378"). The two cases were consolidated for trial.
On June 8, 9 and 10, 1998, a jury trial was held. Richard Booker testified at trial that on September 24, 1997, someone called him on the telephone and said that they had his wallet and checkbook. The person also said that some officers would be coming to perform an "inspection." That same day, appellant and Polk arrived at the Bookers' home, showed badges, and said they were policemen from Boston. Booker further testified that the men asked to see $50 and $100 bills to determine if they were counterfeit, and stated that they would give the Bookers $25,000 if they helped catch the "counterfeiters." Booker stated that before he went into the bank to withdraw the money, appellant gave him a pen which he said was a "microphone," and told Booker he would be listening to Booker's conversation while he was inside the bank. Booker further stated that he would not have let appellant and Polk into his house if they had not represented that they were police officers.
On cross-examination, Booker testified that his wallet had been stolen in August 1997, and that appellant returned it to him on September 24, 1997. Booker further testified that the two men did not say they were from Boston until after he let them into the house. Booker could not remember if anyone ever gave him back his $1,800.
Toledo Police Investigator Al Jones testified at trial that he responded to a call from a National City Bank employee on September 24, 1997. Jones stated that, upon arriving at the bank parking lot, he saw appellant walking away from a brown car with Michigan license plates. Jones further stated that appellant was carrying a badge and handcuffs and identified himself as a police officer from Detroit; however, appellant had no police identification on his person.
Toledo Police Detective Harold Mosely testified at trial that he interviewed appellant after his arrest, and that appellant told Mosely he could give the money back to the Bookers and stated: "If you let me go you'll never see me again." Mosely further testified that appellant said Polk and he originally came to Toledo to give back Mr. Booker's wallet, and that it was Mr. Booker who asked appellant and Polk to accompany him to the bank. Mosely stated that when appellant was arrested he had in his possession a badge, a police scanner and a pager.
Officer Larry Johnson of the Detroit Police Personnel Division testified that there was no record that appellant, or anyone else by the name of Sterling Cromer, had ever served as a Detroit Police officer.
National City Bank employees Sherry Archibald and Joe Eyre testified that Mr. Booker told them two men brought him to the bank and told him to take out $10,000 in cash. Detective Terry Cousino of the Toledo Police Scientific Investigative Unit testified that a briefcase and a notebook found in the Bookers' home had appellant's fingerprints on them.
At the close of the state's case, appellant made a motion for acquittal on the charges of burglary and impersonating a peace officer, which the trial court denied. Appellant did not testify on his own behalf at trial.
On June 10, 1998, the jury found appellant guilty of all the charges made in the indictment. On July 31, 1998, the trial court filed a judgment entry in which it ordered appellant to serve two concurrent three-year prison terms for the two counts of impersonating a peace officer, one six-year prison term for burglary and two terms of eleven months each for theft and attempted grand theft. The court further ordered appellant to serve his sentences for impersonating a peace officer and burglary consecutively, for a total of nine years in prison. On August 27, 1998, a timely notice of appeal was filed.
Appellant argues in his first assignment of error that pursuant to R.C. 2941.25(A), he cannot be convicted and sentenced for both burglary and theft, because they are allied offenses of similar import.
R.C. 2941.25 states, in relevant part:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
It is undisputed in this case that the record contains sufficient evidence to support appellant's separate convictions for theft and burglary. The relevant question, then, is whether appellant may be convicted of and sentenced for both crimes.
R.C. 2911.12(A)(1), which defines the crime of burglary, provides:
 "(A) No person, by force, stealth, or deception, shall do any of the following:
 "(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense * * *."
R.C. 2913.02 provides, in relevant part:
 "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
"* * *
"(3) By deception;
 "(B)(1) Whoever violates this section is guilty of theft. * * *"
As set forth above, the crime of burglary requires that a defendant trespass in an occupied structure with the purpose to commit a theft offense therein. Accordingly, one may commit a burglary without committing a theft. Similarly, one may commit a theft without ever having trespassed in an occupied structure, an element required for the commission of a burglary. Thus, as a matter of law, burglary and theft are not allied offenses of similar import. See State v. Osborne (1997), Huron App. No. H-96-013, unreported citing State v. Mitchell (1983), 6 Ohio St.3d 416, syllabus (aggravated burglary and theft are not allied offenses of similar import).
Upon consideration of the foregoing, this court finds that the trial court did not err by convicting appellant of both burglary and theft and sentencing him for both crimes. Appellant's first assignment of error is not well-taken.
Appellant asserts in his second assignment of error that the trial court erred by convicting him of two counts of impersonating a peace officer. In support thereof, appellant argues that the two crimes should have been merged because they "constituted all one plan, that of obtaining control over another's [sic] person's property."
In State v. Blankenship (1988), 38 Ohio St.3d 116, the Supreme Court of Ohio articulated a two-part test for determining whether two or more crimes are allied offenses of similar import pursuant to R.C. 2941.25(A). First, the elements of the two crimes are compared to determine if the commission of one crime will necessarily result in the commission of the other. Id., at 117. If so, then the crimes are allied offenses of similar import. Id. However, under the second step, "[i]f the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." Id.
As set forth above, appellant impersonated a peace officer on two separate occasions, and for two different purposes. The first time, appellant told the Bookers he was investigating a crime in order to gain illegal entrance into their home. Upon gaining entrance, appellant took approximately $1,800 in cash from Mr. Booker. The second time was in the parking lot at National City Bank, when appellant showed Toledo Police officers a fake badge and stated that he was a Detroit Police officer. At the time of the second encounter, appellant was waiting for Mr. Booker to withdraw $10,000 from his bank account to give to appellant.
Upon consideration of the foregoing, this court finds that appellant attempted to represent himself as a police officer in two different places, to two different groups of people, for purposes of committing two separate crimes. Accordingly, although the method of committing the two crimes was the same, there clearly was a separate animus for each. Appellant's second assignment of error is not well-taken.
On consideration whereof, we find further that appellant was not prejudiced or prevented from a having a fair trial. The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of these proceedings are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ___________________________ Richard W. Knepper, P.J.
Peter M. Handwork, J., James R. Sherck, J. CONCUR.